UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
OGDEN POWER DEVELOPMENT –
CAYMAN, INC., QUEZON GENERATING
COMPANY LTD., and GPI QUEZON, LTD.,

                    Petitioners,                    14-cv-8169 (PKC)

        -against-                             MEMORANDUM
                                                    AND ORDER

PMR LIMITED CO. and PMR POWER, INC.,

                    Respondents.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Petitioners, Ogden Power Development – Cayman, Inc. ("OPDCI"), Quezon Generating Co., Ltd. ("QGC") and GPI Quezon, Ltd ("GPI"), move to dismiss without prejudice their Amended Petition to Compel Arbitration and for Anti-Suit Injunction or Alternatively for Preliminary Injunction (the "Petition" (Dkt. No. 30)), and their supporting motion (the "Motion" (Dkt. No. 31)), pursuant to Rule 41(a)(2), Fed. R. Civ. P.  (Dkt. No. 48.)  Respondents, PMR Limited Co. ("PMR Limited") and PMR Power, Inc. ("PMR Power") oppose petitioners' request and also seek an award of attorneys' fees and costs if petitioners' motion to dismiss is granted. (Dkt. No. 51.)  For reasons to be explained, petitioners' motion is granted with respect to PMR Limited but denied with respect to PMR Power.  Respondents' request for attorneys' fees is denied.

BACKGROUND

        Beginning in 1994, petitioners and respondents, or their respective predecessors, participated in the development, financing, construction, and operation of a coal-fired power plant in the Quezon Province of the Philippines (the "Quezon Power Project").  (Amended

Petition ("Petition"), ¶ 17 (Dkt. No. 30.))  The terms of the Quezon Power Project were set forth in a Development and Shareholders Agreement, which was amended several times.  (Id.)  The current and operative version of the agreement is the Third Amended and Restated Development and Shareholders Agreement ("Third D&S Agreement"), dated October 18, 2004.  (Id.)

The Third D&S Agreement contains an arbitration provision that applies "[i]n the event a dispute arises among the Shareholders." (Third D&S Agreement, § 10.1 (Petition, Ex. B (Dkt. No. 30-2.)))  The agreement provides that petitioners, OPDCI, QGC, and GPI, and respondent PMR Limited, are referred to individually as a "Shareholder" and collectively as "Shareholders."  (Id. § 2.1.)  Respondent PMR Power is not defined as a "Shareholder," but rather is a "signatory" to the agreement "solely for the purposes of acknowledging that its consent hereto is not required . . . and to acknowledge receipt . . . of the PMR Closing Payment." (See id. § 15.20.)

The present controversy arises from the development of a new power plant (the "San Buenaventura Project") in the vicinity of the Quezon Power Project.  (Petition, ¶ 22.)  On October 10, 2014, petitioners initiated an arbitration with the American Arbitration Association ("AAA") in New York, seeking to resolve certain disputes with respondents relating to the San Buenaventura Project.  (MTD, p. 1 (Dkt. No. 48.))  Concurrently, petitioners commenced proceedings in this Court "to protect themselves from Respondents' sustained efforts to have the matters in dispute heard in fora other than in arbitration."  (Petitioners' Reply in Support of MTD ("Pet. Reply"), p. 1 (Dkt. No. 54.))  Respondents opposed the Petition, arguing, inter alia, that PMR Power is not bound by the arbitration provision and that the dispute between petitioners and PMR Limited does not arise under the Third D&S Agreement.  (See Respondent's Response (Dkt. No. 35.))

An arbitral tribunal (the "Tribunal") was constituted on March 10, 2015, and the arbitration is now underway. (MTD, p. 1.) On March 25, 2015, petitioners and respondents appeared before the Tribunal for a preliminary hearing. (Id.) A briefing and argument schedule was agreed upon, including a timetable for respondents to file any motions. (See Tribunal's Procedural Order No. 1 (Declaration of David G. Hille, April 13, 2015 ("Hille Decl."), Ex. B (Dkt. No. 53.)))

Petitioners argue that "[b]ecause the Arbitration is proceeding and because of developments in the proceedings in the Philippines, the relief requested in the Petition and Motion has been largely mooted and all of the issued raised in this action can be fully addressed by the Tribunal." (Pet. Reply, p. 1.) Respondents, however, oppose dismissal of this action primarily because they contend that they have a right for this Court, and not the AAA, to decide the gateway issue of arbitrability. (Respondent Opp., p. 2 (Dkt. No. 51.))

DISCUSSION

I. Rule 41(a)(2) Motion to Dismiss

a. Legal Standard

Rule 41(a)(2), Fed. R. Civ. P., provides that except where all parties agree to a stipulation of dismissal, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Voluntary dismissal without prejudice is "not a matter of right." Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990). However, generally "a voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed if the defendant will not be prejudiced thereby." Catanzano v. Wing, 277 F.3d 99, 109 (2d Cir. 2001) (quoting Wakefield v. N. Telecom, Inc., 769 F.2d 109, 114 (2d Cir. 1985)). Ultimately, a dismissal

pursuant to Rule 41(a)(2) is left to the sound discretion of the district court.  D'Alto v. Dahon Cal., Inc., 100 F.3d 281, 283 (2d Cir. 1996).

In the Second Circuit, courts follow two lines of authority to determine whether dismissal without prejudice should be granted.  See Kwan v. Schlein, 634 F.3d 224, 230 (2d Cir. 2011).  Under the first line of authority, "dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit."  Id. (quoting Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006) (internal quotation marks omitted)).  The second line of authority "involves consideration of various factors, known as the Zagano factors."  Id. (quoting Camilli, 436 F.3d at 123).  The Zagano factors include:

> (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss.

Id. (citation omitted).  "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive."  Id.

     b. Legal Prejudice

Respondents argue that they will be prejudiced by dismissal of this action because it will infringe upon their right to have the issue of arbitrability heard by this Court.  (See Respondent Opp., pp. 2-3.)  Petitioners respond that "not only is the Tribunal fully competent to rule on jurisdiction and arbitrability, the parties have expressly agreed that it is the appropriate body to do so."  (Pet. Reply, p. 3.)  The Court concludes that PMR Power, but not PMR Limited, has the right to a judicial determination of arbitrability.  As such, dismissal of the Petition is improper with respect to PMR Power because the denial of its right to this Court's determination of arbitrability will result in prejudice.

1. Who Should Decide Arbitrability?

The Court will first discuss whether the Court or an arbitrator should decide the arbitrability of the disputes raised in the Petition. The Third D&S Agreement falls within the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38, codified at Chapter 2 of the Federal Arbitration Act ("FAA").[1] 9 U.S.C. §§ 201-208. "Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts." Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995)). This presumption applies in cases arising under the New York Convention, Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009), and is overcome only by "*clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec, 398 F.3d at 208 (quoting Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (emphasis in the original)). Here, the relevant state law is the law governing the Third D&S Agreement, the law of New York. (Third D&S Agreement, ¶ 15.1.)

In PaineWebber Inc. v. Bybyk, 81 F.3d 1193 (2d Cir. 1996), the Second Circuit identified certain principles of New York contract law relevant to determining whether there is clear and unmistakable evidence that the parties intended the arbitrator to decide arbitrability: (1) "[i]n interpreting a contract, the intent of the parties governs;" (2) "[a] contract should be construed so as to give full meaning and effect to all of its provisions;" (3) "[w]ords and phrases

[1] An arbitration agreement is within the New York Convention if it (1) is a written agreement; (2) provides for arbitration in the territory of a signatory to the convention; (3) is commercial in nature; and (4) is not entirely domestic in scope. See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 92 (2d Cir. 1999). The Third D&S Agreement satisfies all four elements—it is a written agreement that provides for arbitration in the U.S., a signatory to the convention, is commercial in nature, and involves foreign parties and a project in the Philippines.

are given their plain meaning." Id. at 1199 (citations omitted) (alterations in original); see also Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003).  The Court applies these principles in interpreting the Third D&S Agreement.

The arbitration clause in the Third D&S Agreement provides as follows:

> In the event a dispute arises among the Shareholders regarding the application or interpretation of any provision of this Agreement or the performance thereof, or the availability of any remedies for breach hereunder, the aggrieved Shareholder shall promptly notify in writing the other Shareholders of the dispute, and if the Shareholders shall have failed to resolve the dispute within ten (10) days after delivery of such notice, each Shareholder shall nominate a senior officer of its organization to meet at any mutually agreed upon location to resolve the dispute. Should the Shareholders still be unable to resolve the dispute to their mutual satisfaction within twenty (20) days after such nomination of senior officers, or any other mutually agreeable time period, then any Shareholder may require that such dispute be submitted to, and determined by, arbitration in accordance with this Section.  Unless the parties mutually agree otherwise, such arbitration shall proceed in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect (the "Rules"), insofar as the Rules are not inconsistent with the provisions expressly set forth in this Agreement . . . .

(Third D&S Agreement, § 10.1.)

Section 10.1 provides that the Commercial Arbitration Rules of the American Arbitration Association ("AAA") will apply.  (Id.)  Among those rules is Rule R-7(a), which states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including with respect to the existence, scope, or validity of the arbitration agreement."  ("Commercial Arbitration Rules and Mediation Procedures" (Hille Decl., Ex. A.))  The Second Circuit has held that when agreements incorporate AAA rules, it constitutes a valid delegation of arbitrability questions to the arbitrator.  See Contec, 398 F.3d at 208 ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales, 518 F. App'x 20, 21 (2d Cir. 2013)("[B]y incorporating the American Arbitration Association

('AAA') rules the parties agreed to have the arbitrators decide arbitrability.") New York courts have reached the same conclusion when the parties incorporate AAA rules. See Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's, 66 A.D.3d 495, 498, (1st Dept. 2009) aff'd, 14 N.Y.3d 850 (2010); In re Application of R D Mgmt. Corp., 196 Misc. 2d 579, 581-82 (Sup. Ct. 2003). Thus, the Court concludes that by incorporating the AAA rules, the Third D&S Agreement provides clear and unmistakable evidence that the parties bound by the arbitration provision intended that an arbitrator decide the issue of arbitrability.

However, it is not clear that all of the parties in this action are bound by the arbitration provision. "Courts have consistently drawn a distinction between arbitration clauses specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties." Complaint of Southwind Shipping Co., S.A., 709 F. Supp. 79, 82 (S.D.N.Y. 1989). The arbitration provision at issue specifically identifies "Shareholders" as the parties bound by the clause.[2] (See Third D&S Agreement, § 10.1 ("In the event a dispute arises among the Shareholders . . . then any Shareholder may require that such dispute be submitted to, and determined by, arbitration.") The Third D&S Agreement defines each petitioner and PMR Limited to be a Shareholder, but excludes PMR Power from this definition. (See id. §§ 2.1, 15.7, 15.20.) Section 2.1 of the Third D&S Agreement provides that "[e]ach of OPDCI, PMR Limited, QGC and GPI (or their respective successors in interest or permitted assignees) . . . are referred to in this Agreement individually as a 'Shareholder' and collectively as the 'Shareholders.' " (Third D&S Agreement, § 2.1.) Section 15.7 explicitly acknowledges that "PMR Power is not a shareholder." (Id. § 15.7.) Rather, PMR Power is a signatory to the

[2] The "Shareholders" referred to in the Third D&S Agreement are equity holders of Quezon Power, Inc. ("QPI"), an entity established to develop, own, and operate the Quezon Power Project. (Petition, ¶ ¶ 14, 19; Third D&S Agreement, § 2.1.)

Third D&S Agreement "solely" for limited stated purposes.  (Id. § 15.20.)  Specifically, the Third D&S Agreement provides that "PMR Power is a signatory to this Agreement solely for the purposes of acknowledging that its consent hereto is not required . . . and to acknowledge receipt by PMR Power of the PMR Closing Payment."  (Id.)  Thus, interpreting the plain language of the Third D&S Agreement compels the conclusion that the parties intended for petitioners and PMR Limited, but not PMR Power, to be bound by the arbitration provision.

The Second Circuit has ruled that where an arbitration clause specifically identifies the parties to which it applies, evidence that the identified parties agreed to arbitrate arbitrability is *not* clear and unmistakable evidence that an arbitrator should decide its jurisdiction with respect to a dispute with a third party.  See The Republic of Iraq v. BNP Paribas USA, 472 F. App'x 11, 12-13 (2d Cir. 2012).  In BNP Paribas, the Republic of Iraq ("Iraq"), a purported third-party beneficiary of the contract at issue, sought to arbitrate certain claims.  Id. The contract incorporated rules that empowered an arbitrator to determine its own jurisdiction but specifically bound only "the Parties" to the arbitration provision.  Id.  The Second Circuit concluded that it was the court, not the arbitrator, that must decide the issue of arbitrability with regard to Iraq, reasoning that the language of the arbitration provision at issue only contemplated the arbitration of arbitrability with regard to disputes between signatories or "Parties" to the agreement.  Id. at 13.

Similarly here, clear evidence of intent to have an arbitrator determine its jurisdiction with regard to disputes between "Shareholders" does not clearly and unmistakably demonstrate the parties' intent to have an arbitrator determine arbitrability with regard to a dispute with PMR Power, a non-Shareholder.  See BNP Paribas, 472 F. App'x at 12-13.  Thus, the Court concludes that the Tribunal should decide the arbitrability of disputes between

Shareholders, including between petitioners and PMR Limited, but that the Court must determine the arbitrability of disputes between petitioners and PMR Power, a non-Shareholder.

2. Will the Parties Suffer Legal Prejudice?

Because PMR Power has the right to have a court determine arbitrability, it follows that PMR Power would suffer legal prejudice if the Court dismissed the Petition. At present, PMR Power, by virtue of the pending Petition, has a valid forum through which to address the issue of arbitrability. Upon dismissal of the Petition, PMR Power would be forced to either submit the issue of arbitrability to the Tribunal, despite its right for a judicial determination, or file an action for declaratory relief for the purpose of protecting its right to have a court decide arbitrability. This is the type of prejudice that weighs against dismissal. See Benitez v. Hitachi Metals Am., Ltd., 11-cv-6816 (NRB), 2012 WL 3249417, at *2 (S.D.N.Y. Aug. 6, 2012) ("Legal prejudice in this context has been defined as the impairment of some legal interest, some legal claim, or some legal argument." (citation and internal quotation marks omitted)); Staten Island Terminal, LLC v. Elberg, 11-cv-3262 (RRM)(LB), 2012 WL 1887126, at *3 (E.D.N.Y. May 23, 2012) ("Under this analysis, the Court primarily seeks to protect a defendant who is ready to pursue a claim or defense *'in the same action* that the plaintiff is seeking to have dismissed.' " (quoting Camilli, 436 F.3d at 124 (emphasis in original)). The Court concludes that dismissal of the Petition without prejudice as to PMR Power is improper. As such, the Court will rule on the merits of the Petition with respect to PMR Power below.

PMR Limited, on the other hand, is not entitled to a judicial determination of arbitrability. Dismissing the Petition as to PMR Limited will result in the Tribunal deciding the question of arbitrability; however, because this is precisely what the parties clearly intended, it does not amount to legal prejudice and is not sufficient grounds for denying the motion to

dismiss. The Court must therefore consider whether the Zagano factors weigh in favor or against dismissal as to PMR Limited.

      c. The Zagano Factors

Under the factors recited in Zagano, dismissal of the Petition and Motion without prejudice as to PMR Limited is appropriate. See 900 F.2d at 14. First, petitioners exercised diligence in seeking dismissal. Petitioners contend that the constitution of the Tribunal and the preliminary hearing "at which the Tribunal confirmed that it was competent to hear all issues of jurisdiction and arbitrability and established a procedure to do so" largely mooted their requests in the current action and led to their decision to seek dismissal. (See Pet. Reply, p. 5; MTD, pp. 2-3.) Petitioners acted swiftly, moving for dismissal three weeks after the Tribunal was constituted and within two days of the preliminary hearing. (See Pet. Reply, p. 5.)

Second, there has been no showing of undue vexatiousness on the part of petitioners. "Vexatiousness is usually used to describe situations where the case was brought to harass the defendant, or the plaintiff otherwise illustrates an ill-motive." Am. Fed'n of State, Cnty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc., 12-cv-2237 (JPO), 2013 WL 2391713, at *3 (S.D.N.Y. June 3, 2013) (internal quotation marks and citations omitted). Courts have found ill-motive where, for example, the plaintiff filed duplicative lawsuits or where the plaintiff assured the court it would proceed with its claims but then sought dismissal. See Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc., 01-cv-9649 (JFK), 2006 WL 3456521, at *5 (S.D.N.Y. Nov. 30, 2006). Respondents assert that "Petitioners' vexatiousness is evidenced by the multiplicity of redundant litigation initiated by Petitioners in various fora," citing a Philippine declaratory action filed in August 2014, the arbitration initiated on October 10, 2014, and the Petition filed with this Court. (Respondent Opp. p. 6.) The Court

accepts petitioners' explanation that they initiated arbitration concurrently with proceedings in this Court not to harass or annoy defendants, but to "aid the Arbitration in light of Respondents' current and threatened efforts at that time to frustrate any resolution of the parties' disputes through arbitration in New York in contravention of the parties' arbitration agreement." (MTD, p. 1.) Further, petitioners argue that the Philippine declaratory action cannot be imputed to petitioners because it was filed by a separate and distinct legal entity, Quezon Power Inc. ("QPI"). (Pet. Reply., p. 6 n. 1.) Under the cases relied upon by both parties, respondents have failed to demonstrate that QPI's corporate form should be disregarded. As such, QPI's action in the Philippines should not be imputed to petitioners for purposes of this motion.

The third Zagano factor assesses the extent to which the suit has progressed, including respondents' efforts and expenses in preparation for trial. The present action has not given rise to the type of expense, duration, or preparation that would weigh against dismissal. PMR Limited has made written submissions to the Court, but as discussed below this work can be re-submitted in arbitration. Further, this action did not require discovery or trial preparation. As such, this proceeding has not progressed to a point where dismissal would be improper or prejudicial.

The fourth Zagano factor takes into account the extent to which dismissal will result in duplicative expenses of relitigation. PMR Limited's efforts and expenses regarding this action will not be wasted upon dismissal. Following the March 25 preliminary hearing in the arbitration, the Tribunal entered a Procedural Order, which indicated that it would address the issues identified by respondents in their answering statement to the Petition, including matters regarding the Tribunal's jurisdiction, joinder of parties, and proper forum. (Tribunal's Procedural Order No. 1, ¶ 1 (Hille Decl., Ex. B.)) Thus, the written submissions for the present

action can be repurposed for use in the arbitration proceeding, to the extent PMR Limited wishes to press the same arguments.  See Ahler v. City of New York, 93-cv-0056 (SS), 1993 WL 362404, at *1 (S.D.N.Y. Sept. 13, 1993) (holding that Zagano factors favored dismissal in part because "[a]lthough defendants [had] answered, they presumably were able to rely on their work . . . in the identical state action").

Finally, petitioners' explanation for seeking dismissal is adequate.  Petitioners assert that this action is largely mooted now that the Tribunal has been constituted and there have been positive developments with regard to actions respondents were taking in the Philippines, from which petitioners originally sought to protect themselves.  (Pet. Reply, p. 8.)  Petitioners assert that they can now "seek relief from the Tribunal as to any actions by Respondents to interfere with the Arbitration."  (Id.)  The Court concludes that this explanation is reasonable.

In sum, the Zagano factors support the granting of petitioners' motion to dismiss as to PMR Limited.  The motion to dismiss without prejudice as to PMR Limited is thus granted.

II.     The Petition is Dismissed with Respect to PMR Power

The Court concluded that PMR Power has a right to a judicial determination of arbitrability.  As such, the Court will now rule on the merits of the Petition and the supporting Motion with respect to PMR Power.

The Petition requests that the Court "enter an order (i) compelling arbitration of Respondents' dispute with Petitioners under the Third Amended D&S Agreement, and (ii) granting an anti-suit injunction, or alternatively, a preliminary injunction (a) directing Respondent PMR Limited to dismiss or cause to be dismissed [a petition filed in a regulatory proceeding in the Philippines] in connection with the San Buenaventura Project, in violation of their agreement to arbitrate and (b) restraining the Respondents, and all persons or entities acting

on their behalf, from bringing any further legal or regulatory action in the Philippines or any other jurisdiction, in violation of their agreement to arbitrate, with respect to the San Buenaventura Project." (Petition, p. 19.)  PMR Power opposes the Petition and the supporting Motion on the ground that the parties to the Third D&S Agreement did not intend to bind PMR Power to the arbitration provision.  (See Respondent's Response, pp. 6-8.)

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)); see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989) (Arbitration is "a matter of consent, not coercion, and the parties are generally free to structure their arbitration agreements as they see fit.")  "Thus, while there is a strong and liberal federal policy favoring arbitration agreements, such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (internal quotation marks and citations omitted).  "[I]n determining the arbitrability of a particular dispute, a court must decide whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1063 (2d Cir. 1993) (citations and internal quotation marks omitted).  For the reasons explained below, the Court concludes that the parties did not intend to bind PMR Power to the arbitration provision.

As discussed earlier, the arbitration provision of the Third D&S Agreement specifically limits its application to "Shareholders," stating in relevant part that "[i]n the event a dispute arises among the Shareholders . . . then any Shareholder may require that such dispute be

submitted to, and determined by, arbitration." (See Third D&S Agreement, § 10.1.) Section 2.1, which defines the term "Shareholders" to include OPDCI, PMR Limited, QGC, and GPI but is silent with respect to PMR Power, and section 15.7, which explicitly states that "PMR Power is not a shareholder," unequivocally establish PMR Power's status as a non-Shareholder. (See id. § § 2.1, 15.7.) Thus, according to the plain language of the Third D&S Agreement, PMR Power is not subject to the arbitration provision.

Nevertheless, petitioners argue that PMR Power is compelled to arbitrate as a third-party beneficiary to the contract. (Petitioners' Reply in Support of Motion to Compel Arbitration ("Pet. Arb. Reply"), pp. 1-2 (Dkt. No. 36.)) They contend that "the law in the Second Circuit is clear, a third party to a contract may be bound by an arbitration provision in the contract where the third party knowingly exploited and accepted the benefits of the contract." (Id. at p. 1 (citing MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 61 (2d Cir. 2001)). To bind a third party to an arbitration clause, "[t]he benefits must be direct—which is to say, flowing directly from the agreement." MAG Portfolio, 268 F.3d at 61. Petitioners explain that PMR Power is seeking to receive a direct benefit from the contract by enforcing a claim to payment for tens of millions of dollars in connection with the development of the San Buenaventura Project, pursuant to section 15.11 of the Third D&S Agreement. (Pet. Arb. Reply, pp. 2-3; Petition, Ex. E.) Section 15.11 states that "PMR Power shall be entitled to certain compensation in respect of the development and financing of any additional coal fired power plant at the site of the [Quezon Power Project]." (Third D&S Agreement, § 15.11.) Petitioners argue that PMR Power cannot have it both ways—it cannot rely on the contract to accept its benefits and reject the contract with regard to its arbitration provision. (Pet. Arb. Reply, p. 2.)

The obligation to arbitrate does not in every circumstance only attach to a party who has personally signed the written arbitration provision.  Thomson, 64 F.3d at 776.  The Second Circuit has made clear "that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.' "  Id. (quoting McAllister Bros., Inc. v. A & S Transp. Co., 621 F.2d 519, 524 (2d Cir. 1980).  This Circuit has recognized estoppel as one theory under which nonsignatories may be bound to an arbitration agreement of others, and petitioners are correct to assert that a third-party beneficiary may be estopped from denying its duty to arbitrate when it receives a "direct benefit" from a contract containing an arbitration clause.  See id. at 778-80; Deloitte, 9 F.3d at 1063-64.

The Court concludes, however, that the principle upon which petitioners rely is not applicable to the situation at hand.  PMR Power is not a nonsignatory third-party beneficiary to the contract, but rather is an explicit signator to the agreement, albeit for a limited purpose.  The Third D&S Agreement's first paragraph states that the agreement "is entered into by and among" OPDCI, PMR Limited, PMR Power, QCG, and GPI, and section 15.20 states that "PMR Power is a signatory to this Agreement."  (Third D&S Agreement, p.1, § 15.20.)  The contract contemplates that PMR Power would receive certain benefits under the agreement but would not be bound by the arbitration provision.  Section 15.11 of the Third D&S Agreement unequivocally gives PMR Power the right to compensation if certain conditions are met, and section 10.1, the arbitration provision, limits the arbitration clause to "Shareholders," a term that explicitly excludes PMR Power as set forth in section 15.7 ("PMR Power is not a shareholder").  (Third D&S Agreement, §§ 10.1, 15.7, 15.11.)  Arbitration agreements, like other contracts, are to be enforced according to their terms and the intentions of the parties.  First Options, 514 U.S. at 947.  Here, it is clear from the plain language of the Third D&S Agreement that the parties

intended PMR Power to both receive certain benefits from the contract and at the same time be exempt from the arbitration provision.

Because the Court concludes that PMR Power is not subject to the arbitration clause at issue, the Court denies the Petition and dismisses the supporting Motion with prejudice as to PMR Power.

III.     Respondents' Request for Attorneys' Fees and Costs is Denied

Respondents request attorneys' fees and costs should petitioners' motion be granted.  (Respondent Opp, pp. 6, 9.)  Rule 41(a)(2) permits a court to condition voluntary dismissal "upon such terms and conditions as the court deems proper, including an award for fees and costs."  BD ex rel. Jean Doe v. DeBuono, 193 F.R.D. 117, 125 (S.D.N.Y. 2000) (citations and internal quotation marks omitted).  "The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him."  Colombrito v. Kelly, 764 F.2d 122, 133 (2d Cir. 1985).  However, fees and costs should be awarded only when "justice so demands."  Gap, Inc. v. Stone Int'l Trading, Inc., 169 F.R.D. 584, 588 (S.D.N.Y.) aff'd, 125 F.3d 845 (2d Cir. 1997).  "Courts within this circuit have refused to award fees and costs following a Rule 41(a)(2) dismissal absent circumstances evincing bad faith or vexatiousness on the part of the plaintiff."  DeBuono, 193 F.R.D. at 125; see also Icon Licensing Grp., LLC v. Innovo Azteca Apparel, Inc., 04-cv-7888 (KMK), 2005 WL 992001, at *4 n. 6 (S.D.N.Y. Apr. 27, 2005) (declining to award attorneys' fees where there was no showing of bad faith or vexatiousness).

There has been no showing of bad faith or vexatiousness on the part of petitioners.  Moreover, as explained above PMR Limited can minimize any duplicative expenses

by repurposing its submissions in this action for use in the arbitration proceedings. As such, respondents' request for attorneys' fees and costs is denied.

CONCLUSION

Petitioners' motion to dismiss the action without prejudice (Dkt. No. 48) is GRANTED as to PMR Limited and DENIED as to PMR Power. Petitioners' Amended Petition to Compel Arbitration and for Anti-Suit Injunction or Alternatively for Preliminary Injunction (Dkt. No. 30) and the supporting Motion (Dkt. No. 31) are DENIED with prejudice as to PMR Power. Respondents' request for an award of attorneys' fees (Dkt. No. 51) is DENIED. Because all of petitioners' claims have been dismissed without prejudice as to respondent PMR Limited and denied with prejudice as to respondent PMR Power, the Clerk shall enter judgment accordingly and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 21, 2015